2011 UT App 148

**Chrystal Celeste CAHOON fka Chrystal Celeste Evans, Petitioner and Appellee,**

v.

**Richard A. EVANS, Respondent and Appellant.**

**No. 20100404–CA.**

Court of Appeals of Utah.

May 12, 2011.

---

John J. Diamond, Sandy, for Appellant.[1]

Maria Cristina Santana, Salt Lake City, for Appellee.

Before Judges McHUGH, ORME, and VOROS.

## MEMORANDUM DECISION

ORME, Judge:

¶ 1 We conclude that Evans had notice of the child support order. Utah Code section 78B–6–315 provides that an individual has notice of a child support order if, among other things, that individual "was properly served and failed to answer." Utah Code Ann. § 78B–6–315(2)(b)(v) (2008). Evans acknowledges that he signed, at Cahoon's request, an Acceptance of Service, Waiver, and Consent To Default. This document obviated the need for service by formal means and gave Evans adequate notice. *See Chen v. Stewart,* 2004 UT 82, ¶¶ 66–71, 100 P.3d 1177 (suggesting that waiver of service and service are equivalent for purposes of satisfying an individual's right to notice). By signing this document, Evans waived the right to answer Cahoon's complaint and agreed that default judgment could be entered against him. Accordingly, under subsection 78B–6–315(2), Evans had sufficient notice of the child support order, *see* Utah Code Ann. § 78B–6–315(2)(b)(v), especially given that the complaint that accompanied the Acceptance of Service mirrors the order the district court entered by reason of Evans's default. The complaint expressly states that Evans was "required to pay child support to [Cahoon] in the amount of $736.00" per month. We therefore conclude that the district court's finding that Evans was legally aware of the child support order was not clearly erroneous. Thus, the district court did not violate Evans's Due Process right to notice by find-

---

1. Counsel for Appellant withdrew after briefing the appeal. He is listed in the caption because the appeal was scheduled for resolution on the briefs without argument prior to his withdrawal, and the appeal was decided on that basis without the need for further input from counsel or the parties.

ing him in contempt of the child support order.[2]

 ¶ 2 Evans claims, however, that Cahoon waited longer than ten days after Evans signed the Acceptance of Service to file the complaint and thereby ran afoul of rule 3(a)(2) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 3(a)(2) (requiring that if an "action is commenced by the service of a summons and a copy of the complaint, then the complaint ... must be filed within ten days of such service" or the action is deemed dismissed). Evans has not persuaded us that the time requirements of rule 3(a)(2) apply in any situation other than the one precisely described in rule 3(a)(2), i.e., where a summons is served. Moreover, it appears that Cahoon sought a divorce under rule 104 of the Utah Rules of Civil Procedure, which provides that a "party in a divorce case may apply for entry of a decree without a hearing in cases in which the opposing party ... waives notice." Utah R. Civ. P. 104. Rule 104 has no timeliness requirement, and it appears that Cahoon otherwise complied with the rule as she applied for a divorce decree after Evans waived notice. *See id.*

 ¶ 3 Next, Evans argues that the district court erred in ordering him to pay child support reimbursement because, he contends, Cahoon waived any claim to child support arrearages and was thereby estopped from seeking them. Utah Code section 78B–12–109 provides that waiver and estoppel apply in the child support context only in certain circumstances. *See* Utah Code Ann. § 78B–12–109. In particular, subsection (1) provides that "[w]aiver and estoppel shall apply only to the custodial parent when there is no [child support] order already established by a tribunal[.]" *Id.* § 78B–12–109(1). Contrary to Evans's interpretation, this subsection rules out waiver and estoppel in all instances where there is a child support order already in place. Al-

though other subsections place additional restrictions on the application of waiver and estoppel, the plain language of subsection (1) expressly limits application of waiver and estoppel to those situations where there is no prior child support order. *See id.* Accordingly, even were we to assume that the letter Cahoon sent to the Office of Recovery Services complied with subsection (3)'s requirement that statements waiving child support arrearages be "reduced to writing and signed by both parties," *id.* § 78B–12–109(3), waiver and estoppel did not apply because a child support order had previously been entered. *See id.* § 78B–12–109(1). We therefore conclude that the district court correctly determined that Cahoon was not precluded by waiver or estoppel from seeking reimbursement for unpaid child support.

¶ 4 Affirmed.

¶ 5 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge, and J. FREDERIC VOROS, JR., Judge.

---

**2.** Evidence also indicates that Evans had actual knowledge of his child support obligations. Specifically, in his Answer to Counterclaim filed in October 2007, Evans claimed that he had been paying more than $1,000 a month in child support plus arrearages, thereby acknowledging his responsibility to pay child support. Testimony also indicated that Evans and Cahoon had discussed child support payments in 2002 and 2004. Further, testimony at trial indicated that Evans "chose to financially support" his girlfriend instead of paying child support. Although Evans denied ever having received a copy of the decree ordering him to pay child support, the district court found his testimony not to be credible.